# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 95-KA-01005 COA

**DALANDA C. PETERS**                                                      **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                    **APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

| | |
|---|---|
| DATE OF JUDGMENT: | 08/29/95 |
| TRIAL JUDGE: | HON. MICHAEL RAY EUBANKS |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHARLES E. MILLER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOLENE M. LOWRY |
| DISTRICT ATTORNEY: | BUDDY MCDONALD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | MURDER:SENTENCED TO SERVE A TERM OF LIFE IMPRISONMENT |
| DISPOSITION: | AFFIRMED - 9/23/97 |
| MOTION FOR REHEARING FILED: | 10/6/97 |
| CERTIORARI FILED: | 12/3/97 |
| MANDATE ISSUED: | 3/18/98 |

BEFORE BRIDGES, C.J., HINKEBEIN, AND KING, JJ.

BRIDGES, C.J., FOR THE COURT:

Dalanda Peters was convicted in the Circuit Court of Pearl River County on August 29, 1995, of the murder of Michael Stockstill. Peters was subsequently sentenced to a term of life in prison. Aggrieved, Peters argues on appeal that 1) the court erred in refusing certain of his requested jury instructions and granting those of the State, 2) that the court erred in denying his motion for directed verdict, and 3) that the facts support a finding of manslaughter instead of murder. Finding no merit in the issues raised by Peters, we affirm the jury's verdict.

FACTS

On July 4, 1994, Peters, who was seventeen, and Abasi Bolden, who was sixteen, were standing on a street corner in Picayune, Mississippi, when they were approached by twenty-six year old Michael Stockstill. Stockstill and Bolden began speaking to each other in a loud, argumentative manner. Bolden would later testify that, unbeknownst to Peters, he and Stockstill were kidding with each other. At this point, Peters stepped in and confronted Stockstill in defense of Bolden. In response to this intrusion, Stockstill diverted his attention to Peters.

A heated argument erupted between Stockstill and Peters. Words and shoves were also involved. Peters left the scene and retrieved a small handgun. Upon his return to the scene, Peters inserted multiple rounds into the gun's clip, inserted the clip into the gun, and chambered one round. More words were exchanged between Peters and Stockstill with neither party backing down from the confrontation. Peters clearly exhibited the weapon and warned Stockstill not initiate any further confrontation. At this point, Stockstill, unarmed and with his hands outstretched, approached Peters while uttering "I'll die for mine." Peters fired numerous shots into Stockstill at close range. As Stockstill turned to stagger away, Peters fired numerous more shots into Stockstill's back. Stockstill died from his wounds.


ARGUMENT AND DISCUSSION OF LAW

I. WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S INSTRUCTION ON SELF-DEFENSE OR IN DENYING PETERS' INSTRUCTION ON SELF-DEFENSE.


Peters argues that the trial court erred in granting the State's instruction S-4 and in denying his proposed instructions D-29, D-30, D-33, and D-35. In support of his contention, Peters argues that instruction S-4 was misleading, and thus, prevented the jury's consideration of his self-defense theory. We find Peters' objection on appeal to instruction S-4 to be procedurally barred. The following exchange between the trial judge and the defense counsel occurred after the denial of the defendant's motion for a directed verdict:

BY THE COURT: All right, Mr. Miller, do you have any objections to any of the instructions granted or refused, and if you do, you may state that into the record.


BY MR. MILLER: Yes, sir. Jury Instruction--State Instruction 5, I object to the introduction of that into the record, and the instructions that the Court refused, I object to that.


BY THE COURT: Of yours?


BY MR. MILLER: Yes, sir.


BY THE COURT: The ones I refused of yours?

BY MR. MILLER: Yes, sir.

BY THE COURT: Well, let's state that into the record, then, at this time. Let me go through the ones that were refused so we can....(judge goes through all twenty-two refused defense instructions).. I believe that concludes all of the instructions that the defense had. Now, some of these that were refused was because they were repetitious or did not properly instruct the jury on the issues.

BY MR. MILLER: And I have a general objection to the motions--to the--I'm sorry, the instructions that were refused.

BY THE COURT: That were refused, okay. If you have any specific ones, you can state that into the record at this point.

BY MR. MILLER: No, sir.

The law is well settled in this state that the failure to object to jury instructions at trial precludes the consideration of the issue on appeal. *See Lester v. State*, 692 So. 2d 755, 799 (Miss. 1997); *Jackson v. State*, 684 So. 2d 1213, 1229 (Miss. 1996); *Walker v. State*, 671 So. 2d 581, 618 (Miss. 1995); *Carr v. State*, 655 So. 2d 824, 856 (Miss. 1995); *Chase v. State*, 645 So. 2d 829, 852 (Miss. 1994). Our review of the record does not reveal an objection at trial to instruction S-4. As shown from the above excerpt, Peters' only objected at trial to State's Instruction number 5. On appeal, Peters argues that the granting of S-4, not S-5, was error. "The assertion on appeal of grounds for an objection which was not the assertion at trial is not an issue properly preserved on appeal." *Ballenger v. State*, 667 So. 2d 1242, 1264 (Miss. 1995). Furthermore, Peters' objection to S-5 is non-specific, and he provides no support for his objection. "No assignment of error based on the granting of an instruction will be considered on appeal by this Court unless specific objection was made to the instruction in the trial court stating the particular ground or grounds for such objection." *Davis v. Singing River Elec. Power Ass'n*, 501 So. 2d 1128, 1131 (Miss. 1987).

Even if Peters' argument were not barred, we find it to be without merit. State's Instruction S-4 reads as follows:

The court instructs the jury that a person may not use more force than reasonably appears necessary to save his life or protect himself from great bodily harm. Where a person repels an assault with a deadly weapon, he acts at his own peril and the question of whether he was justified in using the weapon is for determination by a jury. Also the court instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill them or do them some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to

determine the reasonableness of the ground upon which the defendant acted.

Defense Instruction D-29 reads as follows:

The Court instructs the jury that one who kills another, reasonably believing that he is in real or apparent danger of his life or great bodily harm is not guilty of murder.

Defense Instruction D-30 reads as follows:

A person claiming the right of self-defense is not required to retreat or to consider whether he could safely retreat. If he is honestly and reasonably in fear of death or serious bodily harm he may stand his ground and use whatever force is reasonably necessary under the circumstances, even to the extent of taking the life of the attacker.

Defense Instruction D-33 reads as follows:

The Court instructs the jury that even though you believe from the evidence that the defendant killed the deceased but that the deceased was then seeking to do him some great bodily harm, then the defendant had a right to defend himself, even to the infliction of death, and the Jury must then return a verdict of not guilty. This is true even though the Jury should further believe from the evidence that the defendant was not actually in danger of being done some great bodily harm by the deceased, provided he reasonably believed himself to be in danger of bodily harm at the hands of the deceased.

Defense Instruction D-34 reads as follows:

The Court instructs the jury that if the jury believe from the evidence that the Defendant had reasonable grounds to believe and did believe, that the deceased was about to inflict serious bodily harm upon the defendant, then the defendant had the right to resist the deceased with such violence and weapons as were necessary to protect himself against such assault, even if resort was had to a deadly weapon, and Defendant under the law was not bound to flee or retreat, but might stand and resist so long as apparently necessary to prevent serious bodily harm to himself.

Defense Instruction D-35 reads as follows:

The Court instructs the jury for the defendant that the right of self-defense is one of our inalienable rights. Any person assaulted by another has the right to repel such assault by such means and force as may to him be apparently and reasonably necessary. He should be judged in the light of the circumstances then apparent to him, rather than in the light of after developed facts. If you believe from

the evidence in this case that the defendant, Dalanda C. Peters, was not the aggressor, and that he was assaulted by threats and physical force by the deceased, Michael Stockstill, then the law of self-defense is that the defendant then and there had the right to repel such threats and assaults by using such force as to him was then reasonable and apparently necessary to repel such assault on him and defend himself. If no greater force was under such circumstances then used by the defendant, it is your duty to find the defendant not guilty. And in this respect you are further instructed that if the defendant under such circumstances, did use greater force than was to him apparently reasonable and necessary to defend himself, and did so in the heat of passion and without malice and not in necessary self-defense then he would be guilty of no greater crime than manslaughter, and in such event your verdict should be "We the Jury, find the defendant guilty of manslaughter."

Of the above instructions, only S-4 and D-34 were given. Peters contends that the first part of State's Instruction S-4 is an "arming instruction" and is, therefore, prohibited as interfering with his right to claim self-defense. *Keys v. State*, 635 So. 2d 845, 848 (Miss. 1994). While *Keys* does prohibit arming instructions, S-4 is not an example of an arming instruction. The first part of S-4 was held to be a correct statement of the law in *Stennis v. State*, 234 So. 2d 611, 614 (Miss. 1970). We further find that the Supreme Court recommended the exact language of the second part of S-4 as a substitute for an otherwise confusing and redundant instruction *Robinson v. State*, 434 So. 2d 206, 207 (Miss. 1983) (overruled on other grounds).

With regard to the four defense instructions which were refused by the trial court, it is the opinion of this Court that they were properly refused. The state and Peters proposed self-defense instructions S-4 and D-34 that were given by the court. "All instructions are to be read together and if the jury is fully and fairly instructed by other instructions the refusal of any similar instruction does not constitute revers[ible] error." *Taylor v. State*, 597 So. 2d 192, 195 (Miss. 1992). We feel that the jury was fully and fairly instructed by the state and defense's granted instructions on self-defense. Accordingly, we find no merit to this issue.

II. WHETHER THE COURT ERRED IN DENYING PETERS' MOTION FOR A DIRECTED VERDICT AND WHETHER DELIBERATE DESIGN IN MURDER HAD BEEN PROVEN.

III. IN THE ALTERNATIVE WHETHER THE FACTS WOULD SUPPORT A FINDING OF MANSLAUGHTER.

Since Peters' issues II and III deal with the sufficiency of the evidence, we shall discuss them together. In questioning the court's denial of his motion for a directed verdict, Peters argues that the state failed to prove deliberate design as required by Section 97-3-19(1)(a) of the Mississippi Code of 1972, and that the facts support a finding of manslaughter. We disagree.

This Court's standard of review of denials of directed verdicts is as follows:

In passing upon a motion for a directed verdict, all evidence introduced by the state is accepted as true, together with any reasonable inferences that may be drawn from that evidence, and, if there is sufficient evidence to support a verdict of guilty, the motion for directed verdict must be overruled.

*Gray v. State*, 549 So. 2d 1316, 1318 (Miss. 1989) (citing *Guilbeau v. State*, 502 So. 2d 639, 641 (Miss. 1987)).

Appeals from an overruled JNOV motion are viewed by this Court in a light most favorable to the State. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). Any credible evidence consistent with guilt must be accepted as true. *McClain*, 625 So. 2d at 778. A challenge to the sufficiency of the evidence can result in a reversal only where the evidence, with respect to one or more of the elements of the offense charged, is such that reasonable and fair-minded jurors could only find the accused not guilty. *Id*. at 778. Our review of the record reveals that viewing the evidence in a light most favorable to the state, reasonable and fair-minded jurors could have found Peters guilty.

It is also the opinion of this Court that deliberate design was proven by the State in this case. Deliberate design has been defined as the intent to kill, without authority of law and not being legally justified or legally excusable. *Carr v. State*, 655 So. 2d 824, 847 (Miss. 1995). The Mississippi Supreme Court further explained this element as follows:

A deliberate design cannot be formed at the very moment of the fatal act, however, the deliberate design need not exist in the mind of the defendant for any definite time, not for hours, days, or even minutes, but if there is deliberate design, and it exists in the mind of the defendant but for an instant before the fatal act, this is sufficient deliberate design to constitute the offense of capitol murder or murder.

*Carr*, 655 So. 2d at 847. Our review of the record reveals deliberate design by Peters. Peters left the scene of the confrontation and returned with a gun. He proceeded to load a clip with bullets, insert the clip into the gun, and chamber a bullet. Peters then fired numerous shots into the torso and back of an unarmed and retreating Stockstill. It is the opinion of this Court that Peters had formed a deliberate design to kill Stockstill. Accordingly, we find that the evidence in this case is sufficient to support the verdict of guilty and that this Issues II and III are without merit.

**THE JUDGMENT OF THE PEARL RIVER COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS HEREBY AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO APPELLANT.**

**McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**